IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CHRISTOPHER J. THOMPSON | |
| Plaintiff, | |
| v. | Civil Action No. 2:22-cv-38 |
| EQUIFAX INFORMATION SERVICES, LLC, CKS PRIME INVESTMENTS, LLC, WELLS FARGO BANK, N.A., and BMW FINANCIAL SERVICES NA, LLC, | |
| Defendants. | |

## COMPLAINT

Plaintiff, Christopher J. Thompson, by counsel, files this Complaint against Defendants. In support of his Complaint, Mr. Thompson alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, for statutory, actual, and punitive damages; costs; and attorney's fees.

2. Mr. Thompson is the victim of identity theft, which "has emerged" as "one of the fastest growing white-collar crimes in the United States." *Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 505, 2007 WL 4535267 (4th Cir. 2007). Surveys have shown that "between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone." *Id.*

3. The FCRA "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002). The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer

credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681. To advance its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies and furnishers must follow when consumers dispute the accuracy of the information reported in their credit reports. 15 U.S.C. §§ 1681i, 1681s-2(b).

4. Thus, the FCRA holds consumer reporting agencies and furnishers responsible for taking reasonable steps to correct a consumer's credit report once the theft is brought to the agency's attention. *See Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 506-07 (4th Cir. 2007) ("Of course, Equifax bore no responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct Suzanne's credit report once she brought the theft to the company's attention; this Equifax utterly failed to do.").

5. As a result of identity theft, Mr. Thompson's credit report included multiple accounts that did not belong to him. After Mr. Thompson disputed the inaccurate information with Equifax, Defendants failed to conduct a reasonable investigation and delete the inaccurate information from his credit reports.

6. As a result, Mr. Thompson alleges claims against Equifax for failing to reasonably ensure the maximum possible accuracy of his credit reports in violation of § 1681e(b), and for failing to fulfill its reinvestigation duties in violation of § 1681i.

7. Mr. Thompson also alleges claims against CKS Prime Investments, LLC, BMW Financial Services N.A., LLC, and Wells Fargo Bank, N.A. for failing to properly investigate his disputes as required by § 1681s-2(b)(1).

8. Finally, Mr. Thompson alleges claims against CKS Prime Investments, LLC for attempting to collect a debt from Mr. Thompson that he did not owe in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1681(p), and 15 U.S.C. § 1692k(d).

10. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant CKS Prime Investments, LLC resides in this District.

## PARTIES

11. Mr. Thompson is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

12. Equifax Information Services, LLC ("Equifax") is a foreign limited liability company doing business in Virginia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

13. CKS Prime Investments, LLC ("CKS") is a Virginia limited liability company with its headquarters in Chesapeake, Virginia. At all times relevant to this Complaint, CKS was a "furnisher" as governed by the FCRA and a "debt collector" as defined by 15 U.S.C. § 1692a(6).

14. Wells Fargo, N.A. ("Wells Fargo") is a national association doing business in Virginia. At all times relevant to this Complaint, Wells Fargo was a "furnisher" as governed by the FCRA.

15. BMW Financial Services N.A., LLC ("BMW") is a foreign limited liability company doing business in Virginia. At all times relevant to this Complaint, BMW was a "furnisher" as governed by the FCRA.

## FACTS

16. Mr. Thompson is the victim of identity theft. Someone used his name and personal identifying information to open accounts and services in his name without his knowledge or permission.

17. In 2021, Mr. Thompson reviewed his Equifax credit report and discovered that it included several accounts that did not belong to him.

18. Mr. Thompson sent a dispute letter to Equifax in April 2021 disputing the inaccurate accounts, including the CKS, BMW, and the Wells Fargo/Bob's Furniture accounts.

19. Mr. Thompson's letter explained that he was the victim of identity theft and that the accounts did not belong to him. Mr. Thompson also attached a police report and a signed FTC Identity Theft Affidavit to his letter.

20. Mr. Thompson has never done business with Bob's Furniture, owned a BMW, or obtained a loan from Lending Point or First Electronic Bank (the entities that CKS was trying to collect on behalf of).

21. Upon information and belief, Equifax forwarded Mr. Thompson's dispute to CKS, BMW, and Wells Fargo.

22. In response to Mr. Thompson's dispute, Defendants failed to conduct an adequate investigation into Mr. Thompson's complaint.

23. Instead, CKS, BMW, and Wells Fargo each performed a cursory review to ensure that the information it was reporting to Equifax matched the information in its system and then verified its reporting as accurate. None of these companies investigated whether the accounts resulted from identity theft.

24. Once CKS, BMW, and Wells Fargo submitted their dispute responses to Equifax, Equifax accepted the results of their investigations and conducted no other investigation into Mr. Thompson's disputes.

25. As a result, the inaccurate information remained on Mr. Thompson's credit reports.

26. Mr. Thompson submitted several follow-up disputes to Equifax about this inaccurate information, including on or around May 10, 2021, June 25, 2021, and December 7, 2021. He attached the police report and FTC Identity Theft Affidavit to each of his disputes.

27. Defendants continued their refusal to investigate and correct their inaccurate reporting.

28. Although Equifax informed Mr. Thompson that the CKS account would be deleted from his report in response to his June dispute, the account was reinserted into his file at some point.

29. As a result of the Defendants' failure to remove this inaccurate information from Mr. Thompson's credit reports, he suffered actual damages, including credit denials, a reduced credit score, stress, anxiety, and emotional distress.

30. As a standard practice, Equifax does not conduct independent investigations in response to consumer disputes. Instead, it merely parrots the furnisher's response despite several court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F.

Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

31. Upon information and belief and consistent with its standard policies and procedures, Equifax automatically generated its "investigation" results once the furnishers, like CKS, BMW, and Wells Fargo, responded to Mr. Thompson's disputes, verifying that each account belonged to him, and no Equifax employee took any additional steps for Mr. Thompson's disputes.

32. Instead, Equifax blindly accepted the furnishers' version of the facts and continued to report the inaccurate, derogatory information on Mr. Thompson's credit report.

33. Equifax continues the practice of parroting the response from its furnishers even though it has been repeatedly sued for failing to conduct a reasonable investigation as required by the FCRA.

34. Equifax does not intend to modify its dispute-processing procedures because doing so would skyrocket its operating expenses.

35. Instead, Equifax intentionally chooses not to comply with the FCRA to lower its costs and increase profits. As a result, Equifax's violations of the FCRA were willful.

36. Additionally, CKS's, BMW's and Wells Fargo's processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. For example, their conduct resulted from their intended procedures, which prioritizes efficiency and speed over making sure that the disputes are investigated thoroughly and accurately.

**COUNT ONE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**
**(EQUIFAX)**

37. Mr. Thompson incorporates the preceding allegations.

38. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparing Mr. Thompson's credit reports and credit files it published and maintained.

39. As a result of Equifax's conduct, Mr. Thompson suffered concrete and particularized harm, including: loss of credit, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

40. Equifax's conduct in violating § 1681e(b) was willful, rendering it liable to Mr. Thompson for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined under 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, which entitles Mr. Thompson to recovery under 15 U.S.C. § 1681o

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**
**(EQUIFAX)**

41. Mr. Thompson incorporates the preceding allegations.

42. Equifax violated multiple sections of § 1681i, including, but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Mr. Thompson's credit file in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information submitted by Mr. Thompson in violation of §1681i(a)(4); (3) failing to promptly delete the disputed inaccurate items of information from Mr. Thompson's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A); and (4) failing

to promptly delete the disputed, inaccurate information from Mr. Thompson's credit file in violation of §1681i(a)(5)(A).

43. As a result of Equifax's conduct, Mr. Thompson suffered concrete and particularized harm, including: loss of credit, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

44. Equifax's conduct in violating § 1681e(b) was willful, rendering it liable to Mr. Thompson for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined under 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, which entitles Mr. Thompson to recovery under 15 U.S.C. § 1681o.

## COUNT THREE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)
## (CKS, BMW, AND WELLS FARGO)

45. Mr. Thompson incorporates the preceding allegations.

46. On one or more occasion within the past two years, CKS, BMW, and Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to properly investigate Mr. Thompson's disputes.

47. Mr. Thompson disputed the accounts with Equifax, as discussed above.

48. When Mr. Thompson disputed the accounts with Equifax, CKS, BMW, and Wells Fargo used a dispute system named "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher customers (like CKS, BMW, and Wells Fargo).

49. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

50. When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

51. Upon information and belief, the ACDV form is the way CKS, BMW, and Wells Fargo have elected to receive consumer disputes under 15 U.S.C. § 1681i(a).

52. Upon information and belief, Equifax forwarded Mr. Thompson's dispute via an ACDV to CKS, BMW, and Wells Fargo.

53. CKS, BMW, and Wells Fargo understood the nature of Mr. Thompson's disputes when they received the ACDV forms.

54. Upon information and belief, when CKS, BMW, and Wells Fargo received the ACDV form containing Mr. Thompson's dispute, they followed a standard and systematically unlawful process where they only review their own internal computer screen for the account and repeat back the same information to the ACDV system that was previously reported to the credit reporting agency.

55. Upon information and belief, when CKS, BMW, and Wells Fargo receive a consumer dispute through e-Oscar, they do not conduct a substantive review of any sort to determine whether the information already in their computer system is itself accurate.

56. As a result of CKS, BMW, and Wells Fargo's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Mr. Thompson suffered concrete and particularized harm, including loss of credit, damage to reputation, embarrassment, humiliation, stress, and other emotional distress.

57. CKS, BMW, and Wells Fargo's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rending them liable to Mr. Thompson for punitive damages in an amount to be determined under 15 U.S.C. § 1681n. In the alternative, CKS, BMW, and Wells Fargo were negligent, entitling Mr. Thompson to recover under 15 U.S.C. § 1681o.

58. Mr. Thompson has a right to recover actual damages, statutory damages, costs, and attorney's fees from CKS, BMW, and Wells Fargo in an amount to be determined under 15 U.S.C. §§ 1681n and 1681o.

### COUNT FOUR:
### VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
### (CKS, BMW, AND WELLS FARGO)

59. Mr. Thompson incorporates the preceding allegations.

60. On one or more occasion within the past two years, CKS, BMW, and Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax.

61. As Mr. Thompson detailed in the previous Count, CKS, BMW, and Wells Fargo have elected to use the e-Oscar system for their FCRA disputes received through the consumer reporting agencies.

62. When they received the ACDV forms from Equifax, CKS, BMW, and Wells Fargo did not review any of the documentation that Mr. Thompson attached to his dispute, which demonstrated that he was the victim of identity theft.

63. If they had reviewed these documents, they would have known that Mr. Thompson was an identity theft victim and did not open the accounts that he was disputed.

64. CKS, BMW, and Wells Fargo also ignored the other information that the consumer-reporting agencies provided for Mr. Thompson's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

65. CKS, BMW, and Wells Fargo knew the meaning of the dispute codes used by the consumer reporting agencies in e-Oscar.

66. CKS, BMW, and Wells Fargo do not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

67.　CKS, BMW, and Wells Fargo understood Mr. Thompson's disputes and that Mr. Thompson claimed the accounts did not belong to him.

68.　Yet CKS, BMW, and Wells Fargo did not update their incorrect reporting about Mr. Thompson.

69.　Because of CKS's, BMW's and Wells Fargo's violations of 15 U.S.C. § 1681-2(b)(1)(B), Mr. Thompson suffered concrete and particularized harm, including: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

70.　CKS's, BMW's and Wells Fargo's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering them liable for punitive damages under 15 U.S.C. §§ 1681n and 1681o. In the alternative, CKS, BMW, and Wells Fargo were negligent, entitling Mr. Thompson to recover under 15 U.S.C. § 1681o.

71.　Mr. Thompson can recover actual damages, statutory damages, costs, and attorney's fees from CKS, BMW, and Wells Fargo in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

## COUNT FIVE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(C) and (D)
## (BMW)

72.　Mr. Thompson incorporates the preceding allegations.

73.　On one or more occasion within the past two years, BMW violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing its representations within Mr. Thompson's credit files without also including a notation that the account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

74. BMW failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the credit reporting agencies, which would have reflected that the account was disputed.

75. Upon information and belief, Mr. Thompson alleges that BMW rarely, if ever, added the XB or XC code or other notation that an account was disputed when it responded to ACDV forms.

76. BMW also knew that Mr. Thompson disputed the subject account through his dispute letters to the credit reporting agencies.

77. Mr. Thompson's disputes were bona fide as the accounts were fraudulently opened by a third party without his permission.

78. As a result of BMW's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Mr. Thompson suffered concrete and particularized harm, including: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

79. BMW's violations were willful, rendering it liable for punitive damages under 15 U.S.C. § 1681n. In the alternative, BMW was negligent, entitling Mr. Thompson to recovery under 15 U.S.C. § 1681o.

80. Mr. Thompson can recover actual damages, statutory damages, costs, and attorneys' fees from BMW in an amount to be determined under 15 U.S.C. §§ 1681n and 1681o.

## COUNT SIX:
## VIOLATION OF FDCPA, 15 U.S.C. § 1692e
## (CKS)

81. Mr. Thompson incorporates the preceding allegations.

82. CKS violated § 1692e of the FDCPA by using any false, deceptive, or misleading representation or means in connection with the collection of any debt including attempting to collect a debt from Mr. Thompson that he did not owe.

83. For example, CKS falsely reported to Equifax that Mr. Thompson owed it money for an account that he did not open.

84. CKS also sent Mr. Thompson an email on May 13, 2021 stated that he owed it over $22,000.

85. Both representations were false because Mr. Thompson did not owe any money to CKS.

86. Mr. Thompson suffered actual damages as a result of CKS's violation of § 1692e, including embarrassment, humiliation, and other emotional distress.

87. Mr. Thompson can recover actual damages, statutory damages, his reasonable attorney's fees, and costs under 15 U.S.C. § 1692k.

WHEREFORE, Mr. Thompson demands judgment for actual, statutory, and punitive damages against Defendants; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**MR. THOMPSON DEMANDS A JURY TRIAL.**

Respectfully submitted,
**CHRISTOPHER J. THOMPSON**

By: */s/ Kristi C. Kelly*
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
*Counsel for Plaintiff*